UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CHARLES L. POWELL, Jr.                                                          PLAINTIFF

v.                                              CIVIL ACTION NO. 4:14-CV-P111-JHM

LEA HUMPHREY et al.                                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion for summary judgment (DN 25) filed by Defendants Akins

(Frank Atkinson), Bell, Buckman, Conway (Conaway), Ryan, and Carter.[1]  For the reasons set

forth, the Court will grant Defendants' motion.

## I.

Plaintiff, who is now incarcerated at the Kentucky State Reformatory, filed a *pro se* 42

U.S.C. § 1983 complaint against the above-listed Defendants, all of whom were employed at the

Henderson County Detention Center, where Plaintiff had previously been incarcerated.[2]

Plaintiff's claims against these Defendants involved incidents of alleged excessive force

occurring on three different occasions:  April 27, 2014; September 21, 2014; and October 22,

2014.  The allegations and facts surrounding those incidents will be more fully set out below.

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

---

[1] In their Answer (DN 24) and their summary-judgment motion, Defendants have clarified that the defendant identified by Plaintiff in his complaint as "Akins" is in fact Frank Atkinson and that the defendant identified by Plaintiff as "Ryan Conway" is in fact Ryan Conaway.  Hereinafter, Defendants named by Plaintiff as Akins and Conway will be referred to as Defendants Atkinson and Conaway.

[2] Although Plaintiff sued these Defendants in both their individual and official capacities, only the individual-capacity claims were allowed to continue past initial screening.  *See* DN 6 and 20.

56(a).  The party moving for summary judgment bears the burden of demonstrating the absence

of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence

of evidence to support an essential element of the nonmoving party's case for which he has the

burden of proof.  *Id.*  Once the moving party demonstrates this lack of evidence, the burden

passes to the nonmoving party to establish, after an adequate opportunity for discovery, the

existence of a disputed factual element essential to his case with respect to which he bears the

burden of proof.  *Id.*  If the record taken as a whole could not lead the trier of fact to find for the

nonmoving party, the motion for summary judgment should be granted.  *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of

proof concerning an essential element of the nonmoving party's case necessarily renders all other

facts immaterial."  *Celotex*, 477 U.S. at 323.  The nonmoving party must do more than raise

some doubt as to the existence of a fact; the nonmoving party must produce evidence that would

be sufficient to require submission of the issue to the jury.  *Lucas v. Leaseway Multi Transp.*

*Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990).  The moving party, therefore, is "entitled to

a judgment as a matter of law because the nonmoving party has failed to make a sufficient

showing on an essential element of [his] case with respect to which [he] has the burden of

proof."  *Id*. (internal quotation marks omitted).

A convicted prisoner's only avenue for pursuing an excessive force claim is through the

Eighth Amendment's cruel and unusual punishment clause.  *Combs v. Wilkinson*, 315 F.3d 548,

556 (6th Cir. 2002).  When assessing a claim of excessive force, the core judicial inquiry is

"whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously

and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). "To determine

such motivations on the part of correctional officers, courts should consider the reasons or

motivation for the conduct, the type and extent of force applied, and the extent of inflicted

injury." *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992).

In making the determination of whether force was applied in a good faith effort to

maintain or restore discipline or maliciously and sadistically for the very purpose of causing

harm, the Supreme Court in *Whitley v. Albers*, 475 U.S. 312, 321 (1986), noted that courts

should consider factors such as "the need for the application of force, the relationship between

the need and the amount of force that was used, [and] the extent of injury inflicted." (Internal

quotation marks and citation omitted). A court should also consider factors such as the extent of

any threat to the safety of staff and other prisoners, "as reasonably perceived by the responsible

officials on the basis of the facts known to them, and any efforts made to temper the severity of a

forceful response." *Id.*; s*ee also Hudson*, 503 U.S. at 7. Moreover, the mere fact that a prisoner

was subjected to physical contact which may have been forceful, and which may even amount to

assault under common law, does not itself show a constitutional violation. *See Pelfrey v.

Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995); *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir.

1986). In the prison setting, a good faith use of physical force may be necessary to maintain

prison security and discipline. *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008); *Williams

v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

While the use of force such as pepper spray where other means exist of achieving an

officer's goals may be considered excessive, *see Roberson v. Torres*, 770 F.3d 398 (6th Cir.

2014) (holding that spraying a sleeping prisoner with a chemical agent without using other

means of waking the prisoner, such as an air horn, was unreasonable), such uses of force applied

in a good faith effort to maintain or restore discipline where a prisoner refuses to obey orders are not *per se* unconstitutional.  *See Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (holding no constitutional violation for pepper spraying prisoner who repeatedly refused direct orders to exit the shower).   Moreover, "the reasonableness of force depends on the circumstances under which it is used.  Greater force may be reasonable when used in response to a serious disturbance or acts of inmate[']s violence." *Drummer v. Luttrell*, 75 F. Supp. 2d 796, 803 (W.D. Tenn. 1999).

### *April 27, 2014, occurrence involving Defendants Ryan and Buckman*

Defendants attach an incident report dated April 27, 2014, which states that Defendants Ryan and Buckman heard a loud crash coming from the isolation area and discovered the "roll phone" had been knocked over.  Plaintiff was the inmate assigned to use the phone at that time, and he was pacing in his cell "yelling about how our phone was a piece of junk."  On entering the cell, Defendant Ryan pulled out an OC[3] can from its holster in the event that verbal de-escalation was not achieved.  According to the incident report, when Defendants entered, Plaintiff "took an aggressive stance" and balled his hands into fists.  At that time, Defendant Ryan administered a one-second burst of OC to Plaintiff's face, at which point Plaintiff charged past Defendant Buckman toward Defendant Ryan and struck Defendant Ryan with his fist.  The incident report states that Defendants took Plaintiff to the ground, where Plaintiff "continued to be assaultive in attempting to strike [Defendants] with closed fists."  At that point, Defendant Ryan discharged his taser probes into Plaintiff's lower back.  Plaintiff rolled over, causing the taser leads to break and disrupt the current.  "At that time, [Defendant Ryan] reholstered [his]

---

[3] The Court assumes that "OC" refers to "oleoresin capsicum, the active ingredient in pepper spray." *Odom v. Helton*, No. CIVA. 12-80-HRW, 2013 WL 4012889, at *1 (E.D. Ky. Aug. 6, 2013).

Taser and once again took control of [Plaintiff]," who continued to resist and fight. Defendant Buckman then tasered Plaintiff in the rear upper portion of Plaintiff's thigh.

The incident report further states that, when Plaintiff became partially compliant, Defendants ordered Plaintiff onto his stomach and handcuffed him for the safety of the medical staff. Plaintiff was placed in the medical chair but became non-compliant with the nurse's orders and began to yell. Defendant Buckman then gave him a one-second drive stun, after which Plaintiff became compliant. Plaintiff had several small lacerations and abrasions but was cleared by medical and given a decontamination shower.

Defendants also attach the Henderson County Detention Center Use of Force Standard Operating Procedure and a document entitled TJA Ladder of Force. The Ladder of Force document details that the first stage involves verbal skills and de-escalation techniques. Stage 2 involves an inmate who refuses to comply with a lawful order. Physical control techniques include OC spray, handcuffing and restraining, including in a chair. Stage 3 involves an assaultive/combative inmate, and calls for impact weapons, spray-shield, OC/CS aerosols and grenades. Stage 4 discusses both lethal and less lethal conditions and calls for less lethal munitions, sting-ball grenades, and tasers.

Defendants also attach the affidavit of Defendant Ryan, who avers that on April 27, 2014, Plaintiff assaulted him and Defendant Buckman after they entered the isolation cell. He further avers that "[o]nce inmate Powell struck me, I had no choice but to, pursuant to the TJA Ladder of Force training, discharge my X26 Taser probes to restore order and prevent further injury to myself, Sergeant B[u]ckman, and inmate Powell." He further avers that the "force used upon inmate Powell by me was reasonable, necessary and not excessive in any manner."

In an affidavit, Defendant Buckman avers that "[o]n April 27, 2014, inmate Powell assaulted both me and Deputy Ryan after we entered the isolation cell;" that "[w]hile in a physical struggle with inmate Powell, I had no choice but to, pursuant to the TJA Ladder of Force training, discharge my X26 Taser drive stun to restore order and prevent further injury to myself, Deputy Ryan, and inmate Powell;" and that the force used by him was "reasonable, necessary and not excessive in any manner."

Also attached to Defendants' motion is a medical request slip signed by Plaintiff dated April 28, 2014. That request details his "Complaint/Problem" as: "My neck, back torso and right shoul and ribs are in chronic pain of an ulter cassion with several deputies I need extra strinth Tylenol or something stronger[.] I'm very very deep pain. I got hit in the face and body punches tased." In the blank after the question "How long have you had this problem?" Plaintiff wrote "1998-2014." Also attached are 13 medical requests filled out by Plaintiff in the 16 days leading up to and including the morning of the April 27 incident.[4] Most of these medical requests have to do with chronic back, neck, hip and knee pain and requests for extra strength Tylenol.

In his response, Plaintiff states that on April 27 he became upset that the portable telephone kept cheating him out of money and so, "out of frustration," he knocked the phone cart over." He asserts that Defendants Ryan and Buckman came to his cell while he was sitting on his bunk and "without provocation" pushed him down on the floor and administered taser drive stuns repeatedly to Plaintiff's "'privates.'"

Plaintiff's affidavits relating to the April 27 incident aver as follows: that on that date he was sitting on his bed when he saw Defendant Buckman and Defendant Ryan with spray in his

---

[4] These medical requests are dated April 11, 12, 14, 15, 16, 17, 20, 21 at 2:00 a.m. and another one at 10:30 p.m., 25, 26, and 27 at 6:20 a.m. (before the incident).

hand.  Defendant Buckman pushed him down on the floor and tased him "in my privates over

and over while [Plaintiff] was crying for relief then hand cuff with 2 sets and was seated in the

outside of 400 isolation and held down in a chair so the nurse could look at my injuries."  He

continues, "While nurse was looking at my injuries [Defendant Buckman] came over tasing me

several times in my heart and neck, shoulder . . . ."  A separate affidavit states that Defendant

Ryan came in and "started punching me in the face then punch me with my glasses on and the

glasses cut my nose and tear duck and [I] was shoved to the floor rec[ei]ving punch one after

another . . . ."

In reply, Defendants dispute the validity of Plaintiff's affidavits offered in support of his

response to the summary-judgment motion.  Plaintiff's affidavits are not notarized.  However, in

*Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002), the Sixth Circuit held that a

district court may consider un-notarized affidavits:

> Peters contends that, because the document was not notarized or dated, it is not a
> valid "affidavit." While an "affidavit" is required to be sworn to by the affiant in
> front of an "officer authorized to administer oaths," see Black's Law Dictionary
> 54 (5th ed.1979), 28 U.S.C. § 1746 allows for "unsworn declarations under
> penalty of perjury" to support any matter that legally requires an affidavit to
> support it. According to § 1746, the declaration must comport to the following
> form: "I declare (or certify, verify or state) under penalty of perjury that the
> foregoing is true and correct. Executed on (date)." 28 U.S.C. § 1746(2). . . .
> Courts are generally consistent in validating documents that were sworn to under
> penalty of perjury, notwithstanding the fact that they were not notarized.

Here, Plaintiff's affidavits specifically refer to the requirements of 28 U.S.C. § 1746, stating,

"This affidavit is given pursuant to Title 28 U.S.C. Section 1746."  Given the reference to

§ 1746, the Court does not consider these affidavits to be *per se* invalid for purposes of deciding

Defendants' summary-judgment motion.

Additionally, Defendants' reply argues that much of the content of Plaintiff's affidavits

does not conform to Fed. R. Civ. P. 56(c)(4) because it is not made on personal knowledge or

7

because it constitutes inadmissible hearsay.  Finally, Defendants question Plaintiff's competency to offer affidavits given his own statements that he has a history of mental illness and has required psychiatric treatment during his incarceration.  Where Plaintiff's affidavits are not made on personal knowledge or constitute inadmissible hearsay, the Court will not consider them.  However, for purposes of deciding Defendants' motion for summary judgment, the Court assumes that Plaintiff is not incompetent to make an affidavit due to a history of mental illness or psychiatric treatment.

Turning to the merits of the summary-judgment motion, it is clear that there is no dispute that on April 27th force was applied or that Plaintiff sustained some minor injuries due to the application of force.  Plaintiff's affidavits do not address whether he was being compliant with officers' instructions, although according to his affidavit when Defendant Buckman came into his cell on April 27, Plaintiff "was sitting on the bed."  In his memorandum in support, Plaintiff admits that "[o]ut of frustration, [he] . . . knocked the phone cart over," and the Court does not consider the minor discrepancy between Plaintiff's averment that he was sitting on his bed and the incident report's statement that Plaintiff was pacing in his cell to be significant.  Plaintiff's affidavit does not contradict the statements in the incident report or Defendants' affidavit that Plaintiff took an aggressive stance and balled his hands into fists before the OC spray was administered and that Plaintiff assaulted the officers after they entered his cell, thereby prompting Defendants to take him to the ground and then taser him when he continued to be assaultive.

Moreover, the two Defendants' affidavits are bolstered by the incident report and the medical slip filled out by Plaintiff the next day.  For example, according to Plaintiff's memorandum, Defendant Buckman repeatedly administered his taser drive stun to Plaintiff's

"privates." Yet, the medical request slip after this incident does not mention any pain in that area. In fact, that medical slip is not dissimilar to the 13 medical slips filled out by Plaintiff in the 16 days leading up to and including April 27. Nor does that medical slip mention any ongoing problems from having been sprayed with OC spray. The April 28th medical slip even states that Plaintiff has suffered from the complained-of pain from 1998 to 2014.

The evidence shows that force was used by Defendants in a good faith effort to restore discipline. Plaintiff has failed to make a sufficient showing that Defendants used force maliciously or sadistically to cause harm. This finding is bolstered by the minor extent of the injury inflicted. *See Whitley*, 475 U.S. at 321. Therefore, Defendants are entitled to summary judgment in their favor on this claim. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

*September 21, 2014, occurrence involving Defendant Conaway*

Attached to Defendants' motion for summary judgment is the incident report dated September 21 which details that Defendant Conaway was told by another officer that Plaintiff was making unnecessary noise and had threatened an officer. Defendant Conaway entered the cell with another officer "to inform [Plaintiff] that being disrespectful and threatening . . . deputies will not be tolerated or accepted." However, Plaintiff interrupted him, stating loudly, "Fuck you and fuck him. I am not going to listen to you." Plaintiff was told to sit on his bed, and when he did not, Defendant Conaway forced Plaintiff onto his bunk. According to the incident report, when Plaintiff started to get off the bunk again, Defendant Conaway again forced him down. This time, Plaintiff bumped his head on the wall. Defendant Conaway then backed up toward the door. Although Plaintiff kept using "aggressive and provocative language," Defendant Conaway made no move towards Plaintiff unless Plaintiff made threatening

statements or moveents towards any of the officers.  When Plaintiff stopped talking, the officers left the cell.

Also attached is the affidavit of Defendant Conaway who avers that on September 21, "after threatening deputy Jeremy Rogers . . . inmate Powell repeatedly refused to comply with my orders for him to sit down on his bunk and threatened to assault me."  He continues, "After inmate Powell's repeated refusals to comply with my orders and continued threats toward me and Deputy Rogers, I had no choice but to administer the minimum amount of physical force to place inmate Powell on his bunk."  He further avers that the "force used upon inmate Powell by me was reasonable, necessary and not excessive in any manner" and that "Inmate Powell suffered no serious injury as a result of my use of force on him."

The medical request filled out by Plaintiff on September 21 states in the portion of the form labeled "Complaint/Problem":

> My head got banged up against the wall around 1:00 A.m. by Sgt. Conway and my chronic neck is really hurting and head ackes I need an x-ray done on my neck to see why its hurting me so bad  I need a bone specialist to look at it because it crooked and I can't sleep  I toss and turn all night with pain and headackes.  Can you help with extra strength Tylenol[.]  I'm indigent and no money to get it off commissary.

The response by the medical staff was that there was nothing to redress and that no bruising or swelling was noted in the area of his head that inmate indicated had hit the wall.  Plaintiff had full range of motion of his neck.  The form states:  "Detainee requesting Tylenol for chronic pain is currently on Naproxen BID per MD order."  Also attached to Defendants' motion for summary judgment are medical slips dated a few days earlier, on September 18 and 19, which also complained of chronic neck pain.

In his response to the summary-judgment motion, Plaintiff argues that he:

10

needed a shower and made a request to officer Rogers which was refused. Moments later, Officer Conway arrived at Plaintiff's cell, pulled off his 'spray-belt' and shirt (officer Conway) telling Plaintiff to 'shut up' then pushed him down on the bed causing Plaintiff to hit his head against the wall. Officers Conway and Rogers then shut the cell door and laughed.

Plaintiff references an affidavit by him, but none of the attached affidavits refers to the September 21, 2014, incident.

Defendants have submitted evidence showing that Plaintiff had exhibited threatening behavior and had not complied with officers' orders, necessitating physical intervention by officers. Additionally, Defendants have shown that their response to Plaintiff's action was not out of line with the Detention Center's protocol for dealing with unruly inmates. Further, the evidence shows that Plaintiff suffered at most minor injuries.

A jail has a legitimate interest in having inmates obey orders. *Caldwell v. Moore*, 968 F.2d at 601. "'Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control.'" *Id*. (quoting *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)). Plaintiff does not submit any evidence that he did not make unnecessary noise or threaten an officer or use aggressive and provocative language. Moreover, the medical slips show that he did not sustain any injury from hitting his head against the wall and, in fact, that Plaintiff had made similar complaints of neck pain before the September 21 incident. Thus, Plaintiff has failed to rebut Defendants' evidence showing that they did not use excessive force during this incident. Therefore, Defendants are entitled to summary judgment as a matter of law.

### *October 22, 2014, occurrence involving Officers Bell, Carter, and Atkinson*

The incident report for this date states that Plaintiff became irate after he returned from recreation to find that some things from his cell had been thrown out. According to the incident

11

report, Plaintiff stated, "'those cups are for my meds you f***ing dumbass, give them back now motherf***er before I take your head off.'" Plaintiff was then told that he would have to pay for two sheets that he had torn up, to which Plaintiff responded, "'I'm not f***ing paying for that shit. I didn't do nothing.'" After Plaintiff made clear that he was not going to sign the charge sheet, Defendant Bell shut the cell door. Plaintiff then threw a cup of water under the door. According to the incident report, Defendant Carter entered the cell and gave Plaintiff three orders to get up and step out of the cell, but Plaintiff failed to comply. Defendant Carter then gave Plaintiff another order to step out. Defendant Bell "grabbed hold" of Plaintiff's arm and extracted him from the cell. "[O]nce outside of the cell [Plaintiff] wanted to fight and not listen to deputy's orders." The incident report states that Defendants Bell and Carter were joined by Defendant Atkinson and that the three officers were able to get Plaintiff under control and in handcuffs. Plaintiff was taken to a cell where "he continued with his attitude and was resisting when ordered to his knees." Defendant Conaway then came to the cell, unholstered his taser, and ordered Plaintiff to comply or he would receive a drive stun. Plaintiff complained that his arm was broken and hurt "really bad." Medical was called and cleared Plaintiff.

Defendants have submitted the affidavits of Defendants Carter, Bell, and Atkinson. Defendant Carter avers that, after Plaintiff threw water in his direction, he "ordered four times for him to exit cell 409." After Plaintiff "refused each lawful order to exit his cell" and after Defendants Carter and Bell "had exhausted all attempts to reason with [Plaintiff], I had no choice but to administer physical force to remove him from the cell pursuant to the TJA Ladder of Force training." He further avers that after Plaintiff was removed from the cell, Plaintiff "became physically combative" and he and Defendants Bell and Atkinson "had no choice but to restrain and handcuff him to restore order and prevent injury" to Plaintiff and Defendants. Defendant

12

Carter further avers that "I believe the limited force used upon inmate Powell by me, Deputy

Bell, and Deputy Atkinson was reasonable, necessary and not excessive in any manner" and that

Plaintiff "suffered no serious injury and was cleared by medical staff shortly after the incident."

The affidavits of Defendants Bell and Atkinson echo that of Defendant Carter.

   In a medical request dated October 22, 2014, Plaintiff claimed he had a broken arm and

needed to go to the hospital.  He stated he was "in chronic pain and swelling bad, also got

sprayed and the OFC Bell -n- Conway refuse to give me a shower."  The medical staff response

was "has old faded bruising color to rt outer elbow yet no deformity or edema yet he says he

can't straighten it out unless he has great deal of pain.  He wants a x-ray of rt elbow area."  In a

medical request dated October 25, 2014, Plaintiff asks for "x-ray done on my arm.  I believe its

broken or the cartlege is messed up in my shoulder -n- elbow.  It's in chronic pain and need pain

medication . . .  I'm also requesting an arm brace and a back brace."  The medical staff wrote the

following, "Then detainee started asking about his cholesterol levels- thyroid levels and

[illegible] x-rays.  Earlier this week after started complaining about rt. elbow, he picks up his mat

using his rt arm [without] difficulty."

   Plaintiff's affidavits concerning this incident aver that while Defendant Akins was

assisting in putting Plaintiff into another cell, Defendant Akins "used excessive force pop my

right elbow to a painful shape and loud pop I hollered out you broke my arm and my arm begain

to swell very big . . . ."  None of Plaintiff's affidavits concerning this incident aver that he was

being compliant with officers' instruction.  He averred that he yelled that his arm had been

broken, but no documentation supports that Plaintiff's arm was broken.  In short, Plaintiff has not

shown that Defendants used excessive force.  In fact, the evidence shows that Defendants

engaged in a good faith use of physical force necessary to maintain prison security and discipline

13

and not maliciously or sadistically to cause harm. Because Defendants have submitted evidence that they did not use excessive force, they are entitled to summary judgment in their favor on this claim as well.

### III.

For the foregoing reasons,

**IT IS ORDERED** that Defendants' motion (DN 25) is **GRANTED**.

The Clerk of Court is **DIRECTED** to terminate as parties to this action the following: Defendant Atkinson (identified on the docket sheet as both Ofc. Akins and Officer Adkins), Ofc. Brian Bell, Cody Buckman, Ryan Conaway (identified on the docket sheet as Conway), Eric Ryan, and Officer Carter.

Date:   March 25, 2016

*Joseph H. McKinley*

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc:     Plaintiff, *pro se*
        Counsel of record
4414.009

14